798 F.2d 1417
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Raymond G. WHEATON, Petitioner,
v.
NORTH AMERICAN COAL CORPORATION; Employer-Respondent,
Director, Office of Workers' Compensation Programs, Respondent.
 No. 85-3417.
 United States Court of Appeals, Sixth Circuit.
 July 15, 1986.
 
 Before MILBURN and RYAN, Circuit Judges, and BERTELSMAN, District Judge*.
 RYAN, Circuit Judge.
 
 
 1
 Raymond Wheaton seeks reversal of a Benefits Review Board decision which reversed the judgment of the administrative law judge and denied his claim for disability benefits under the Black Lung Benefits Act, 30 U.S.C. Secs. 901-945. The Board agreed with the administrative law judge's conclusion that Wheaton successfully invoked the interim presumption of disability under 20 C.F.R. Sec. 727.203(a)(1) through X-ray evidence of pneumoconlosis and employment in a coal mine for longer than ten years, but concluded that, as a matter of law, respondent North American Coal Corporation successfully rebutted the interim presumption of total disability with proof that Wheaton was still capable of his usual coal mine work. The basis for the Board's decision was the expert medical opinion of Dr. Gillespie, who opined that Wheaton was still capable of his usual work. The administrative law judge had rejected Dr. Gillespie's medical opinion that Wheaton was not totally disabled. The Board concluded that the administrative law judge's rejection of Dr. Gillespie's opinion and finding that petitioner was disabled were not supported by substantial evidence. On appeal, two issues are presented for our review:(1) whether the Board correctly concluded that the ALJ's refusal to give credence to Dr. Gillespie's medical opinion was not supported by substantial evidence; (2) whether the Board was correct in concluding that North American Coal Corporation successfully rebutted the interim presumption of total disability. For the reasons set forth below, we conclude that the Board was correct in both determinations, and we affirm its decision.
 
 I.
 
 2
 Wheaton was sixty-four years old at the time of the administrative hearing. He has twenty-nine years of qualifying coal mine employment. His last employer was respondent North American Coal Corporation. Wheaton left work on June 9, 1978, and has not worked since. He gave three reasons for leaving coal mine employment: (1) he was bothered by coughing spells which made it difficult for him to drive to work; (2) he "could not take" the fifty-eight mile trips back and forth to work; and (3) he was ready to retire.
 
 
 3
 All of the X-ray evidence in the case indicated that Wheaton had simple pneumoconiosis. Pneumoconiosis is a chronic dust disease of the lung caused by exposure to coal dust. 30 U.S.C. Sec. 902(b). It is commonly known as "black lung" disease. The X-ray evidence of pneumoconiosis, coupled with Wheaton's employment in a coal mine for longer than ten years, created a presumption of total disability. 20 C.F.R. Sec. 727.203(a)(1).
 
 
 4
 Under Sec. 727.203(a), a coal miner who has worked at least ten years in a coal mine can establish a rebuttable presumption of total disability in four ways: (1) through X-rays which establish pneumoconiosis; (2) through ventilatory studies which establish a chronic respiratory or pulmonary disease; (3) through blood gas studies which demonstrate the presence of an impairment in the transfer of oxygen from the lungs to the blood; and (4) through other medical evidence that establishes total disability as the result of pulmonary or respiratory impairment.
 
 
 5
 The medical evidence received by the administrative law judge included, in addition to the X-rays, the testimony of two physicians, Drs. Carneiro and Gillespie, a blood gas study, and a ventilatory test performed on Wheaton. Dr. Carneiro's testimony was discredited by the administrative law judge and neither party has challenged that judgment, Consequently, that testimony is irrelevant to our review.
 
 
 6
 The administrative law judge's rejection of Dr. Gillespie's testimony is the crux of this case. Dr. Gillespie concluded that Wheaton had simple pneumoconiosis, a history of chronic bronchitis, and some indication of heart disease. On the basis of medical tests performed on Wheaton, Dr. Gillespie thought that Wheaton had normal ventilatory ability and lung size, normal blood oxygenation and gas exchange, normal airway resistance, and normal peak oxygen uptake. He concluded that there was no objective medical evidence to indicate that Wheaton had any physiological disabilities as a result of his simple pneumoconiosis. Dr. Gillespie determined that Wheaton was capable of his usual coal mine work.
 
 
 7
 The administrative law judge rejected Dr. Gillespie's conclusions for four reasons: First, Dr. Gillespie failed to express an opinion whether Wheaton's complaints of shortness of breath on exertion, swelling of the feet, dizziness, and productive cough were supported by objective medical evidence and failed to state what caused Wheaton's symptoms. Second, Dr. Gillespie's deposition testimony indicated that "he may not be in complete agreement with the presumptions contained in the Act and regulations. " Third, Dr. Gillespie's opinion that Wheaton had normal blood oxygenation was based on a blood gas study he previously determined to be unreliable. Fourth, Dr. Gillespie did not state whether Wheaton's chronic bronchitis would be aggravated by further exposure to coal dust.
 
 
 8
 The Benefits Review Board concluded that the administrative law judge's decision not to credit Dr. Gillespie's testimony was not supported by substantial evidence. The Board found that when Dr. Gillespie's opinion that Wheaton was still fit for his usual coal mine work was taken into account, the interim presumption of disability had been rebutted as a matter of law.
 
 II.
 
 9
 Our review of the Benefits Review Board decision is limited to a determination whether its findings are "supported by substantial evidence and in accordance with the applicable law." Kolesar v. Youghiogheny & Ohio Coal Co., 760 F.2d 728, 729 (6th Cir.1985). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938) ).
 
 
 10
 * One of the reasons the administrative law judge rejected Dr. Gillespie's testimony was the doctor's declared disagreement with "the presumptions contained in the Act and regulations." The Benefits Review Board concluded that "even a cursory examination" of Dr. Gillespie's testimony revealed that he had "no conflict or disagreement with the Act." Our review of the record, however, indicates that the administrative law judge was justified in concluding that Dr. Gillespie disagreed with the presumptions in the act.[1] This, of course, does not end our inquiry. Disagreement with the presumptions in the act and regulations is insufficient, standing alone, to permit a factfinder to completely disregard the opinion of a medical professional, at least where that opinion is based on competent medical evidence. The administrative law judge gave other reasons for discounting Dr. Gillespie's testimony. One such reason was the witness' failure to comment on the cause of Wheaton's reported symptoms. It is clear from the record that the Board correctly concluded that Dr. Gillespie did state that there was no objective medical evidence to support Wheaton's reported symptoms. Dr. Gillespie's diagnosis of chronic bronchitis was "by history." That is, it was based on Mr. Wheaton's own description of his symptoms.
 
 
 11
 The administrative law judge also discounted Dr. Gillespie's conclusion that Wheaton's blood oxygenation and gas exchange by carbon monoxide were normal. The ALJ found that Dr. Gillespie failed to explain the basis for his conclusion that Wheaton tested normal where the results of the test were sufficient to establish a presumption of total disability. Yet, the record indicates that Dr. Gillespie did state the reason why he concluded the blood gas test results were normal. Dr. Gillespie explained that Wheaton hyperventilated when he was poked with the needle through which the blood used in the test was drawn. The doctor stated that the elevated PH level in Wheaton's blood demonstrated that hyperventilation caused the abnormal results. Thus, the Board correctly found that the administrative law judge erred when he concluded that Dr. Gillespie failed to provide a basis for his diagnosis of normal blood oxygenation.
 
 
 12
 Similarly, we believe the Board properly found that Dr. Gillespie's failure to "express an opinion as to whether any potential aggravation of claimant's chronic bronchitis by further exposure to coal dust might limit his ability to perform his usual coal mine employment is of no legal consequence in the instant action." Dr. Gillespie concluded that there was no evidence of impairment or disease related to inhalation of coal dust that would affect Wheaton's ability to work as a coal miner. Implicit in this conclusion is an opinion that Wheaton could work as a coal miner without the coal dust aggravating his chronic bronchitis. Regardless, the act and its accompanying regulations did not require Dr. Gillespie to render such an opinion.
 
 B
 
 13
 Dr. Gillespie's conclusion that Wheaton was fit for his usual coal mine employment was based upon medical findings that Wheaton had normal ventilatory ability, lung size, airway resistance, peak oxygen uptake, and blood oxygenation and gas exchange by carbon monoxide. Wheaton argues that a "normal" result on one of the tests used to establish the interim presumption of disability may not be used to rebut the presumption created by the X-ray evidence that he is totally disabled. He asserts that "[o]nce the presumption arises, the miner's failure to satisfy the remaining tests does not rebut the presumption." Hampton v. United States Department of Labor Benefits Review Board, 678 F.2d 506, 508 (4th Cir.1982).
 
 
 14
 The rationale for the Hampton rule is that use of nonqualifying tests to rebut a presumption previously established violates the language of the governing regulations ." [H]eavy reliance on nonqualifying tests in the rebuttal phase of the case effectively forced the claimant to come forward with proof of pneumoconiosis by two or more accepted testing techniques before he could derive any practical benefit from the interim presumption--a burden totally incompatible with the language and purposes of the applicable regulations." Whicker v. United States Department of Labor Benefits Review Board, 733 F.2d 346, 348 (4th Cir.1984).
 
 
 15
 While we agree with the rule of Hampton, we find that it is inapplicable to this case. The Board relied on Dr. Gillespie's medical opinion that Wheaton was fit for his usual coal mine work when it concluded the interim presumption had been rebutted. Section 727.203(b) provides that all relevant evidence shall be considered in determining whether the presumption of disability is rebutted. 20 C.F.R. Sec. 410.414(c) provides that all "relevant evidence," as used in Sec. 727.203(b),
 
 
 16
 includes medical tests such as blood gas studies, electrocardiogram, pulmonary function studies or physical performance tests, and any medical history evidence submitted by the miner's physician ....
 
 
 17
 See also, Kolesar, supra, 760 F.2d at 730. By definition, "relevant evidence" includes the blood gas studies and pulmonary function studies used by Dr. Gillespie to support his conclusion that Wheaton was fit for his usual coal mine work.
 
 
 18
 Dr. Gillespie did not merely rely on normal test results when he concluded that Wheaton was not totally disabled. Rather, his medical opinion was based upon his thorough examination of Wheaton. The examination revealed no objective medical evidence of any symptoms reported by Wheaton. He opined that he could find no evidence of total disability.
 
 
 19
 The Board relied on Dr. Gillespie's medical opinion, not the nonqualifying tests, when it concluded that the presumption had been rebutted. On this basis, we find the rule of Hampton to be inapplicable. We do not imply that a normal reading on any one of the tests delineated in Sec. 727.203(a) would suffice, standing alone, to rebut an abnormal test as provided in that subsection. However, we believe that normal test results on the other tests of Sec. 727.203(a) "assume some probative value when corroborated by other evidence such as expert medical testimony." Underhill v. Peabody Coal Co., 687 F.2d 217, 223 (7th Cir.1982).
 
 
 20
 Thus, Dr. Gillespie's reliance on the pulmonary function study and arterial gas study was not error. The normal test results in those studies, corroborated by the expert testimony of Dr. Gillespie, were probative in determining whether Wheaton was totally disabled within the meaning of the Black Lung Benefits Act. The administrative law judge erroneously discounted Dr. Gillespie's testimony. The Board correctly concluded, as a matter of law, that the interim presumption of Sec. 727.203(a)(1) had been rebutted.
 
 
 21
 The judgment of the Benefits Review Board is affirmed.
 
 
 
 *
 The Honorable William O. Bertelsman, Judge, United States District Court for the Eastern District of Kentucky, sitting by designation
 
 
 [1]
 We have in mind particularly that portion of Dr. Gillespie's deposition found on pp 79-80, and pp 98-99 of the Joint Appendix